```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION


UNITED STATES OF AMERICA,      ) Tampa, Florida
                               )
              Plaintiff,       ) No. 8:18-cr-594-T-24JSS
                               )
                               ) Docket No. 110
         vs.                   )
                               ) May 6, 2019
RUDOLPH RANDOLPH MEIGHAN,      )
JORGE RAMON NEWBALL MAY, and   )
CALBOT REID-DILBERT,           )
                               )
              Defendant.       ) Courtroom 10B
_____)
```

**EXCERPT TRANSCRIPT OF JURY TRIAL**
BEFORE THE HONORABLE SUSAN C. BUCKLEW
UNITED STATES DISTRICT JUDGE

(Government and Defense Opening Statements)

*Official Court Reporter:*

*Scott Gamertsfelder, RMR, FCRR*
*801 North Florida Avenue*
*Tampa, Florida 33602*
*Telephone: (813) 301-5898*

*(Proceedings reported by stenotype; Transcript produced by computer-aided transcription.)*

**A P P E A R A N C E S**

**GOVERNMENT COUNSEL:**

    **Daniel M. Baeza, Assistant U.S. Attorney**
    **Nicholas DeRenzo, Assistant U.S. Attorney**
    United States Attorney's Office
    400 North Tampa Street, Suite 3200
    Tampa, Florida 33602
    (813) 274-6000

**DEFENSE COUNSEL:**

    **David A. Dee, Esq.**
    Law Offices of David A. Dee, PA
    311 South Brevard Avenue
    Tampa, Florida 33606
    (813) 258-0406

    **Bjorn E. Brunvand, Esq.**
    Bjorn E. Brunvand, PA
    615 Turner Street
    Clearwater, Florida 33756
    (727) 446-7505

    **Pedro Amador, Jr., Esq.**
    Law Office of Pedro Amador, Jr.
    2203 North Lois Avenue, Suite 925
    Tampa, Florida 33607
    (813) 250-0556

                   **ALSO PRESENT:**

                       James Plunkett, Interpreter

                       Jesse Leonor, Interpreter


                            - - -

**TABLE OF CONTENTS**

|  | **PAGE** | **LINE** |
|---|---|---|
| Government Opening Statement................... | 4 | 12 |
| Meighan Defense Counsel's Opening Statement... | 11 | 12 |
| Newball-May Defense Counsel's Opening Statement | 12 | 13 |
| Reid-Dilbert Defense Counsel's Opening Statement | 14 | 22 |

**P R O C E E D I N G S**

May 6, 2019                                                     2:03 p.m.

- - -

THE COURT: Mr. DeRenzo, are you going to make the opening statement?

MR. DERENZO: Mr. Baeza, Your Honor.

THE COURT: Mr. Baeza, you may make an opening statement on behalf of the United States.

MR. BAEZA: Yes, Your Honor.

May I proceed, Your Honor?

THE COURT: You may.

MR. BAEZA: Ladies and gentlemen of the jury, good afternoon.

We have heard the phrase that a picture is worth a thousand words. In this case, you are going to be asked how many words is over an hour of video worth.

Let's go back to December 1st of last year. We are in the Caribbean, about 110 nautical miles southwest of Jamaica. This is an area of the Caribbean Sea where the depth is measured in the thousands of feet rather than tens of feet. The closest land mass is the Island of Jamaica.

It's sunny; it's in the afternoon; scattered clouds. While an airplane flies low overhead, four men are in a boat, referred to as a lancha. You'll also hear it referred to as a go-fast vessel or a GFV.

1        This boat is about 30 feet long, fiberglass.  This
2   particular boat is painted black.  It's covered with a tarp.
3   On the back are two outboard engines, two 75-horsepower
4   engines on the back of the boat, and it's traveling north at
5   a high rate of speed.  As that plane flies overhead, the men
6   on the boat come to a stop.
7        After they come to a stop, they begin throwing
8   packages into the water, and these packages you'll hear
9   referred to throughout this case as bales.  These bales are
10  about two feet long, about a foot-and-a-half wide and about a
11  foot thick.
12       These bales, you will hear, have the same
13  appearances and look as cocaine bales, consistent with about
14  20 kilograms of cocaine per bale, which is about 44 pounds,
15  if we are going to use the American system rather than the
16  metric system.
17       These bales are thrown into the water, but tied to
18  a rope, a yellow nylon rope, and bale after bale after bale
19  is thrown into the water while tied to this rope, like a
20  string of Christmas lights in the water.
21       After doing that, the defendants then tie a rope
22  to one of those outboard engines and they sink the entire
23  thing to the bottom of the ocean.
24       Now, with one engine, this go-fast vessel or
25  lancha gets underway again, starts moving again, circles

1  around a bit, comes to a stop, and then the men on board do
2  this again, with more packages, tied up to a rope and thrown
3  into the water, again, like a row of Christmas lights in the
4  water.  They then strap it to the last engine and sink the
5  entire thing.  And then they wait.  They wait a few hours,
6  until the Coast Guard comes to conduct a boarding of the
7  vessel.
8           You are going to hear that when the Coast Guard
9  arrived -- this is what was referred to as a law enforcement
10 detachment or a LEDT.  You'll hear about what they found on
11 board:  Three Colombian nationals and one Belizean national.
12          They found fuel barrels.  And what they didn't
13 find, they didn't find a radio, they didn't find hazard
14 lights, they didn't find a GPS, they didn't find a satellite
15 phone, and they didn't find any fishing equipment on board.
16          You will hear that the crew members told the Coast
17 Guard that this vessel had been adrift at sea for six days.
18 The Coast Guard law enforcement detachment took swabs of the
19 boat.  They swabbed the boat, the compartments, they swabbed
20 the defendants' arms, their forearms, and they swabbed their
21 palms, their hands.
22          These swabs were placed in what's called an ion
23 scan machine.  Sounds high-tech.  But if you've been to an
24 airport, you've probably seen one.  These are the devices
25 that the TSA will swab your hands with while you are waiting

1  to check in for your flight or to go through security.  That
2  ion scan showed repeatedly the presence of cocaine on board
3  this vessel.  It was there on the vessel, it was there in the
4  cargo hold, it was there on their forearms, and it was there
5  on their hands.
6              Ladies and gentlemen, this case is about
7  international cocaine smuggling on the high sea.  The judge
8  told you earlier that the defendants are charged in what's
9  called an indictment.  This is an accusation by a grand jury.
10 They are charged in two separate counts.  These are separate
11 crimes that they are alleged to have committed.
12             Count One is the conspiracy.  What you will
13 basically hear, it's an agreement between two or more people
14 to do something illegal.
15             Count Two is referred to as a substantive count.
16 This is possession with intent to distribute or to distribute
17 more than 5 kilograms or more of cocaine.  Both counts charge
18 another element or another portion of it; a vessel subject to
19 the jurisdiction of the United States.  That issue has been
20 resolved.  All you need to consider is whether there was a
21 conspiracy with 5 kilograms or more of cocaine and whether
22 there was possession with intent to distribute and
23 distribution of 5 kilograms or more of cocaine.
24             Now, here's how we will do this.  We are going to
25 prove this case through the witnesses and evidence that's

1  going to be presented up to you during the course of this
2  trial.  We have the burden of proof.  That burden never
3  leaves this table.  We have it throughout the entirety of
4  this trial, and we will prove it through the witnesses that
5  you will see at that witness stand, the exhibits that we
6  present to you, the exhibits that you will see, the witness
7  testimony that you will hear.
8          The witnesses will include patrol aircraft
9  crewmen, boarding team officers, federal agents, and others.
10 The exhibits you see will be documents, pictures, and the
11 video I was talking about.
12         Let's talk a little more about that video.  I told
13 you earlier that while all of this was going on with this
14 go-fast vessel there was a plane flying overhead.  This was
15 not just a commercial aircraft, ladies and gentlemen.  This
16 was a Coast Guard C-130 patrol aircraft, white with
17 distinctive red stripes, four large propellers on it, flying
18 low enough in the air to be seen with the naked eye.
19         This patrol aircraft didn't just fly by.  It was
20 circling around and around and around the defendants' boat
21 while all of this was happening.  And they weren't just
22 watching either.  There was a camera on that patrol aircraft,
23 and the crew members hit the record button.  You are going to
24 see that video.  You are going to see this video of the
25 vessel with no markings on it, no name, no registration

1  number, no country of origin, painted black, covered with a
2  tarp, go from having two engines, coming to a stop,
3  jettisoning bales of what we will prove to you to be cocaine,
4  off of the vessel, tied to a rope, then tied to an engine and
5  sunk.  Then with one engine on the vessel, the vessel again
6  moves, comes to a stop, and the cycle repeats itself.
7          You will also hear about the boarding.  After this
8  was all observed, the location of where this vessel was was
9  passed on to the Coast Guard in this law enforcement
10 detachment, and they arrived several hours later.
11         Bear in mind this was a large area of the sea to
12 be dealing with.  The Coast Guard law enforcement detachment
13 arrives a few hours later and they encounter the defendants.
14 You will hear about that boarding.  You'll hear about the
15 smells of the vessel, the distinct smell of gasoline and
16 cocaine, from people who have dealt with this before.  You'll
17 hear about the demeanor of the crew, the crew that says they
18 have been adrift at sea for six days.
19         You'll hear about the lies they told to the Coast
20 Guard during that boarding process.  You'll hear about the
21 swabbing process and the testing process to show there was
22 cocaine on board this vessel.
23         You'll also hear about when these defendants were
24 formally arrested by the federal government and a
25 post-*Miranda* interview was conducted.  You've seen "Law and

1  Order" or police shows.  A Miranda interview is when you are
2  advised of your right to remain silent and how everything you
3  say can and will be used against you.
4         You will hear about the admissions of the
5  defendants, the admissions of the things that they simply
6  could not deny, and all of the denials of the things that
7  they simply could not admit to.  Denials, ladies and
8  gentlemen, that the evidence will show is grossly
9  inconsistent with what the evidence is in this case.
10        We expect this case to take about four days, more
11 or less, to present.  We are going to do everything we can to
12 present this case to you as quickly and as efficiently as
13 possible.
14        Some witnesses may have to be called out of order
15 as a result.  This is not intended to confuse you in any way,
16 but it's simply intended to get this case to you as quickly
17 as possible so you can discharge your duties as jurors and
18 render a verdict.
19        The first witness we will call will be witnesses
20 who had to travel from outside the district to be here, and
21 we anticipate the first witnesses will be the patrol aircraft
22 crew that videotaped this event in international waters.
23        After you hear all the evidence in this case, my
24 colleague, Mr. DeRenzo, will have an opportunity to speak to
25 you again.  He'll summarize the evidence and argue why there

1  is only one verdict that could result from this evidence.
2              I told you at the beginning -- I said, a picture
3  is worth a thousand words.  And in this case, you are going
4  to be measuring the worth of over an hour of video.  I submit
5  to you that if a picture is worth a thousand words, the video
6  in this case is worth one word.  And that word is guilty.
7              Thank you all for your time and thank you all for
8  your service.
9              THE COURT:  Mr. Dee, on behalf of Rudolph Randolph
10 Meighan.
11             MR. DEE:  Thank you, Your Honor.
12             May it please the Court.  Ladies and gentlemen of
13 the jury, good afternoon.  I'll briefly introduced myself
14 when we were all in here earlier.  I'm David Dee, and I have
15 the pleasure of representing Rudolph Randolph Meighan, who is
16 sitting at the table next to me in the light blue shirt.
17             As Her Honor has already explained to you, as
18 Mr. Meighan sits here today, he sits here presumed innocent,
19 and he remains presumed innocent until or if you change your
20 mind.  And that job, as Mr. Baeza just said, belongs at that
21 table (indicating).  The gentlemen at this table have to
22 present evidence to you to convince you beyond a reasonable
23 doubt that Mr. Meighan committed these crimes.
24             Mr. Baeza talked to you about what he anticipated
25 the evidence to be.  I'm going to ask you to also consider

1  the lack of evidence.  You have the right to look at what is
2  in evidence and what is not in evidence.
3          As we go through this trial, I believe the
4  evidence is going to be a lot of assumptions by witnesses of
5  the government.  It will not be hard evidence.  It will not
6  be something that they are going to put before you and say,
7  look, here it is.  They are going to ask you to make
8  assumptions.  I ask you not to do that, and I think Her Honor
9  will instruct you not to do that at the end of this trial.
10          Thank you very much.
11          THE COURT:  Mr. Brunvand.
12          MR. BRUNVAND:  Thank you, Your Honor.
13          Good afternoon.
14          There will be a video presented to you and there
15  will be photos presented to you and there will be evidence
16  presented to you that my client was on a vessel in the middle
17  of the ocean.  There will be evidence presented that certain
18  type of ion testing showed traces of what appear to be
19  cocaine on his hands.
20          However, the government says that the video -- the
21  government says a picture is worth a thousand words and the
22  video is worth a guilty verdict.
23          Members of the jury, we respectfully disagree, and
24  we would propose to you that you need to keep an open mind
25  throughout this case.  You need to view the evidence, you

Case 8:18-cr-00594-SCB-JSS   Document 267   Filed 11/07/19   Page 13 of 16 PageID 2399

13

1  need to listen to the evidence, you need to listen to the
2  questions that are asked, to the cross-examination that is
3  provided, and you need to listen to the closing arguments
4  that are made by both sides.
5         At the conclusion of the case, yes, you will find
6  that my client was on a vessel in the ocean and you will find
7  there are some other suspicious circumstances surrounding his
8  presence on this vessel in the middle of the ocean.  But what
9  you will also find that's going to be completely absent from
10 the equation and that is an essential part of a guilty
11 verdict, a guilty verdict requires the government to prove
12 that my client conspired, that is, he had discussions and an
13 agreement with others to participate in the distribution of
14 5 kilograms or more of cocaine.
15        It also requires, for the possession with intent
16 to distribute count, that he did so knowingly and willfully.
17 The government will not be able to prove that my client
18 knowingly and willfully possessed with intent to distribute
19 5 kilograms or more of cocaine.
20        The government will not present evidence that my
21 client conspired with anyone to possess with intent to
22 distribute cocaine.
23        If, in fact, we had a video and in a perfect world
24 the video included the circumstances that leads to my client
25 being on the vessel in the middle of the ocean, then maybe we

Newball-May Defense Counsel's Opening Statement
USA v. Meighan, Newball-May, Reid-Dilbert; 8:18-cr-594-T-24JSS
May 6, 2019 - Jury Trial Excerpt - Docket No. 110

1   would know.  Maybe we could then go back and we could say,
2   okay, we could hear the discussions that led to him being on
3   the boat.  We could hear discussions that may have taken
4   place.  But the problem is, that doesn't exist.
5           All you will know is that they are on the boat,
6   that there are traces of cocaine.  And what you see on the
7   video, it will not explain -- it does not explain how they
8   got there, who brought them there, what was suggested in
9   order for them to get there, what were their options and
10  choices once they were there.
11          There will be no evidence that my client knowingly
12  and willfully possessed the cocaine and that my client
13  knowingly and willfully conspired with anyone to do anything
14  with the cocaine.
15          After you've heard all the evidence in this case
16  and listened to the closing arguments by both sides and you
17  go back and you deliberate and you take the time that's
18  required, justice demands only one verdict.  That is a
19  verdict of not guilty as to both counts.
20          Thank you.
21          THE COURT:  Mr. Amador, on behalf of Reid-Dilbert.
22          MR. AMADOR:  May it please the Court, Counsel,
23  ladies and gentlemen of the jury.  Again, my name a Pedro
24  Amador, and I represent Calbot Reid-Dilbert.
25          I'm not going to belabor this too much.  You've

1  heard it a couple of times already, but Mr. Reid-Dilbert is
2  presumed innocent until and unless the government proves
3  every element of the crime against him.
4        The evidence is going to come primarily from that
5  witness stand, and I ask that you listen not only to the
6  direct examination but also to the cross-examination.  It is
7  just as important.
8        I ask that you listen to what the witnesses say
9  and also what they don't say.  Again, the government has the
10 burden to prove every element of the offense.  And at the end
11 of the case, you, the jury, will decide what the facts are
12 and if the government has met its burden.  Thank you.
13        (2:22 p.m.)
14               - - -

```
UNITED STATES DISTRICT COURT    )
                                )
MIDDLE DISTRICT OF FLORIDA      )
```

**REPORTER CERTIFICATE**

I, Scott N. Gamertsfelder, Official Court Reporter for the United States District Court, Middle District of Florida, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct **EXCERPT** transcript from the stenographic notes taken by the undersigned in the matter of *UNITED STATES vs. RUDOLPH RANDOLPH MEIGHAN, JORGE RAMON NEWBALL MAY, and CALBOT REID-DILBERT*, Case No. 8:18-cr-594-T-24JSS (Pages 1 through 14), and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

/s/ *Scott N. Gamertsfelder*, RMR, FCRR

*Official Court Reporter*

Date: November 7, 2019